**E-FILED on** 4/22/13

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JULIAN Gonzales,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>　　　　Defendant. | No. C-11-06152-RMW<br><br>ORDER GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT<br><br>**[Re Docket Nos. 30, 31]** |

Plaintiff Julian Gonzales ("Gonzales") brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision by the Commissioner of Social Security ("Commissioner") denying his claims for disability insurance benefits under the Social Security Act. Presently before the court are the parties' cross-motions for summary judgment. Having considered the papers submitted by the parties and the entire administrative record, and for the reasons set forth below, the court GRANTS the Commissioner's cross-motion for summary judgment and DENIES Gonzales's motion for summary judgment.

# BACKGROUND

### A. Procedural Background

The Social Security Administration (SSA or "Agency") awarded Gonzales disability benefits beginning on September 1, 2002 based on his childhood disabilities. On his eighteenth birthday, the SSA re-assessed Gonzales's eligibility for disability benefits under the adult standard. Administrative Transcript ("Tr.") 291. The evaluating state agency determined that Gonzales was no longer disabled as of June 30, 2007 because he did not meet the criteria for compensable adult disability. *Id*. Gonzales sought review by an Administrative Law Judge (ALJ), who affirmed the Agency's decision in October 2008 on the basis that Gonzales was not disabled under the adult criteria. *Id*. Gonzales appealed, and the Appeals Council affirmed. *Id*. Gonzales then sought review in this court. *Id*. In March 2009, this court found that a medical opinion apparently missing from the record available before the ALJ prejudiced Gonzales and remanded for re-hearing, ordering the ALJ to consider only information in the record and allowing Gonzales to add additional relevant documentation before the next hearing. Case No. 09-01776, Dkt. No. 19 ("Remand Order"). In a decision dated February 16, 2011, the ALJ largely re-affirmed his previous decision, again denying Gonzales benefits. *Id*. at 302 ("ALJ's Remand Decision"). On November 9, 2011, the Appeals Council affirmed the ALJ's Remand Decision. *Id*. at 276. Gonzales seeks review in this court.

### B. Gonzales's Age, Educational, and Vocational History

Gonzales was born on March 5, 1988, and made it to his senior year of high school, but did not graduate because he was many credits short. Tr. 244-45. While in school, Gonzales was in special education classes and maintained a GPA in the first percentile of his class. *See* Tr. 86-93. Gonzales worked as a stockman at his brother's store for about four months, but the ALJ determined that he had no past relevant work experience because his earnings were too low to be considered substantial gainful activity. Tr. 98, 229, 301.

### C. Gonzales's Medical History

Gonzales has claimed disability since September 1, 2002 and onward, including from his reassessment date on his eighteenth birthday, March 5, 2006. Tr. 79. His claimed disabilities are

congenital anomalies of the heart and that he suffers from dizziness and fatigue due to migraines or headaches. *Id*. at 70. The court describes those relevant to the motions before it.

### 1. Congenital heart defects

Gonzales was born with a congenital heart defect called "tetralogy of Fallot" and has undergone three surgeries to alleviate the condition at age three months, age three, and age sixteen. Tr. 548, 233, 165. In his pre-hearing brief, dated December 1, 2010, Gonzales described these procedures as "somewhat improvised" and therefore "palliative" rather than "fully curative," *id*. at 369, but does not cite to the record to support this conclusion. Gonzales further states that his extertional activities are severely limited due to this abnormality. *Id*. at 370, 759.

Gonzales has seen several physicians regarding his heart condition. Most relevant to the appeal, in April 2007, one month after Gonzales's 18th birthday, Dr. Clark Gable examined Gonzales and determined that Gonzales takes no medication for any cardiac condition and plays basketball "a fair amount of the time," ultimately finding the examination to be "normal." *See id*. at 165-67. By contrast, Dr. Stafford Grady, a cardiologist that has seen Gonzales since birth, submitted a report in November 2010 that found Gonzales to be "severely limited" by the congenital heart disease, determining him to be "exercise intolerant." *Id*. at 759. Dr. Grady determined that Gonzales's symptoms were "chronic" and that surgery had not improved his condition. *Id*. In the November 2010 report, Dr. Grady's findings indicated Gonzales would not be able to work. *See id*. at 760-69.

### 2. Emotional Problems

Gonzales additionally argues that general emotional issues, described mostly as depression, factor into his disability determination. Several physicians made observations on Gonzales's emotional disposition. For example, Ahmed El-Sokkary, Psy.D., performed a series of tests on Gonzales and diagnosed him with "depressive disorder, [Not Otherwise Specified ("NOS")]." Tr. 164. Dr. El-Sokkary nonetheless determined that "[Gonzales] was able to maintain a sufficient level of concentration, persistence and pace to do basic work in an environment that health condition would allow." *Id*. In addition, Dr. Joe Azevedo conducted a mental status examination and determined Gonzales's mood to be "euthymic" and noted that he had "no signs of any formal thought

disturbance." *Id*. at 376. Dr. Azevedo further described Gonzales's insight, judgment, expressive and receptive language skills as "fair," but noted that his concentration was "mildly impaired." *Id*.

### 3. Migraine Headaches

Gonzales also complains of migraine headaches. In November 2007, the latest evaluation of record assessing Gonzales's migraine headaches, Dr. David Chen determined that Gonzales suffered from "mixed-type headaches" that are likely to be variants of a migraine, but also described these episodes as both "mild" and "relatively infrequent." Tr. 229. Dr. Chen determined that "Ibuprofen is reasonable as an abortive treatment, and [Gonzales] and his mother seem to be satisfied with his response to Ibuprofen." *Id*. In addition, Dr. Chen found that both Gonzales and his mother "do not think he needs prophylactic treatment or prescription or abortive medicine at this time." *Id*. Finally, Dr. Chen "reassured them that [he did] not think [Gonzales's] headaches need further workup, given his normal examination and their occasional occurrence." *Id*.

### D. ALJ Findings and Conclusions

The ALJ found Gonzales to be "not disabled" at step two of a five-step analysis, determining that Gonzales's impairments did not meet the criteria as outlined in Sections 4.0, 12.04 and 12.05[1] as applied to "tetralogy of Fallot; mixed migraine headaches; and a depressive disorder, NOS," respectively. Tr. 294. The ALJ found that the heart condition did not qualify under Section 4.0 because the recent medical records established that Gonzales's symptoms had been stable for several years and that his treatment plan, involving only an annual visit to a cardiologist with no prescription medication prescribed, did not rise to the level of severity required to meet a listed impairment in the section. *Id*. The ALJ further found that neither the mixed migraine headaches nor the depressive disorder meet the criteria for Sections 12.04 or 12.05. *Id*. To qualify as "disabled" under those sections, the applicant must satisfy the tests prescribed in "paragraph B,"[2] which requires a showing of "marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of

---

[1] Sections 4.0, 12.04 and 12.05 are listings ALJ identified as applicable with respect to Gonzales's congenital heart defect and mental impairments. The ALJ compared the criteria in the listings to Gonzales's complaints to make his determinations. *See* Tr. 294.

[2] Paragraph B prescribes the criteria for a disability finding resulting from a mental impairment. Tr. 294.

ORDER GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT—No. C-11-06152-RMW
TMDH 4

decompensation, each of extended duration." *Id*. at 294-95. In analyzing these, the ALJ determined that only mild to moderate impairment existed, and that Gonzales therefore did not meet the severity level required to meet the listings. *Id*. Finally, the ALJ determined that Gonzales's physical and mental impairments also did not meet or medically equal the requirements of any other listed impairment. *Id*. Applying these determinations, the ALJ found Gonzales to be limited to lifting and carrying no more than twenty pounds occasionally and no more than ten pounds frequently; as standing or walking for no more than six hours total in an eight-hour workday; and sitting no more than six hours total in an eight-hour workday. *Id*.

The ALJ found: (1) that Gonzales's "medically determinable impairments could reasonably be expected to produce the alleged symptoms," but (2) that Gonzales's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible," stating six reasons to support his finding. Tr. 300. The ALJ discredited Gonzales's testimony because of:

> "[Gonzales's] own lack of consistent subjective complaints to his doctors of the same severe symptoms he generally alleges; the conflicting, well supported, and essentially uncontroverted opinions of the examining and non-examining physicians present in the record; the presence of several essentially normal examinations in the record; the claimant's acknowledgment to his most recent examining and non-examining physicians that his headaches were mild, relieved by over-the-counter medications, and did not interfere with his ability to sustain activity; the claimant's acknowledged use of only over-the-counter medications considered appropriate for the relief of minor pain despite his complaints of disabling pain and despite being prescribed a trial of Imitrex in the past; and the presence of significant inconsistencies between the claimant's statements made in materials submitted in connection with his application for benefits, statements made during testimony at the hearing, and statements made to his doctors and contained in the record."

*Id*. The ALJ also assessed each of the physicians' evaluations in the record and concluded that the previously disabling conditions—including his headaches, cardiac symptoms, and depression—had improved since the original finding of disability in Gonzales's childhood. *Id*. at 296.

Beginning with the headaches, the ALJ noted that Gonzales was referred to specialist Dr. Chen, who noted that Gonzales "took only Tylenol and Ibuprofen for his headaches," despite being prescribed Imitrex. *Id*. at 296-97. Gonzales also described his headaches to the ALJ as "mild." *Id*. at 297. The ALJ relied on: (1) Dr. Chen's conclusion that no follow-up was necessary unless the severity increased, and that Ibuprofen was sufficient to manage the headaches; and (2) Dr. Chen's suggestion that lifestyle changes, such as eliminating caffeinated drinks and the occasional use of alcohol and cigarettes, could

improve Gonzalez's headaches. *Id*. The ALJ noted that Dr. Chen's report constituted the most recent evaluation for Gonzales's headaches, with no additional visits, notes or emergency room visits in the record to indicate an increase in severity or worsening of the condition overall. *Id*.

The ALJ also found "the record [to] indicate[] that [Gonzales] has no cardiac symptoms." *Id*. In assessing the examinations performed by Dr. Grady, a cardiologist, the ALJ found that Dr. Grady's treatment was both "routine" and "conservative," finding the treatment notes to be generally unremarkable in that they did not "document any new exacerbation of symptoms." *Id*. at 297. Although Dr. Grady submitted a treating source opinion that reported "several functional limitations in standing, walking, lifting and carrying, pushing or pulling, climbing and overhead work," the ALJ found this opinion to be inconsistent with the rest of Gonzales's treatment record. *See id*. at 298-300.

For instance, the ALJ noted that Gonzales did not "report any history of exercise intolerance"; that he reported at his first hearing that he plays basketball in some form "on a regular basis";[3] that he was not prescribed any cardiac medication; that he received only irregular check-ups from Dr. Grady; that he had reported previous work as a stockman; that there was no evidence supporting the alleged deterioration of his reported conditions; and that the bulk of the evidence addressed his conditions *before* the relevant period (i.e., from his redetermination at age 18 and beyond), but not during the relevant period. *Id*. In light of these observations, the ALJ concluded with respect to Dr. Grady's favorable report that "his statement is inconsistent with available treatment record [sic] and [Gonzales's] own allegations." *Id*. at 300.

The ALJ credited both: (1) Dr. Clark Gable, who opined that, despite having an "impressive [heart] murmur," Gonzales would be able to perform light to medium work; and (2) Dr. Shepard Fountain, who found that Gonzales's "impairments would not prevent him from performing a full range of medium exertional work." *Id.* at 299. The ALJ further credited the impartial, non-examining medical expert, Dr. West, from the first hearing,[4] who testified that Gonzales's condition "would warrant

---

[3] Contrary to his testimony at the first hearing, Gonzales testified at the second hearing that he was no longer able to play basketball or work. Tr. 299. The ALJ appeared to discredit the new testimony because there were "no supporting documents to substantiate his subjective complaints" and because Gonzales was neither on new medication nor had he reported any new or exacerbated symptoms. *Id*.

[4] Dr. West did not testify at the second hearing.

prophylactic limitation against performing more than light exertional work" but that none of the other reported symptoms and conditions "would warrant any additional limitations, have any significant effect on his ability to sustain competitive employment, or prevent him from performing a full range of unskilled light exertional work on a regular and continuing basis." *Id*. at 299.

Regarding Gonzales's reported depression, pursuant to the Remand Order, the ALJ included psychologist Dr. Azevedo's examination report (from Gonzales's January 2003 visit) in the record and fully considered Dr. Azevedo's test results.

The ALJ noted that the report's disappearance from the previous record was the "primary bas[is]" upon which Gonzales appealed, but also noted that Dr. Azevedo's 2003 report was generated when Gonzales was only fourteen years old, prior to the relevant time frame for assessing his adult disability. *Id*. The ALJ concluded therefore that "the consultative examinations performed more recently in 2007 . . . are more representative of [Gonzales's] current mental state, and therefore more useful for his application for disability under the adult criteria." The ALJ did note, however, that the "recent consultative examinations are *generally consistent with Dr. Azevedo's evaluation*." *Id* (emphasis added). For example, the ALJ credited Dr. Azevedo's conclusion that the 2003 test results indicated that Gonzales "would have no more than mild deficits in general cognitive abilities, which were further, [sic] limited to the verbal skill domain" and would experience "no more than mild restriction of his ability to maintain persistence and pace, and no more than mild restriction of his ability to concentrate, socialize and verbally communicate." *Id*. at 298.

Moving to the more recent psychological examinations, the ALJ concluded that "all of the mental health opinions in the record point to a claimant who is capable of performing simple repetitive tasks." *Id*. Looking to the evaluations of Dr. Glenn Ikawa, a state agency medical consultant psychiatrist, and Dr. El-Sokkary—whose opinions the ALJ prescribed "considerable weight" due to the proximity of the examinations to Gonzales's redetermination at his 18th birthday—the ALJ noted that both doctors concluded upon examination that Gonzales would be able to work on a regular and continuing basis. *Id*. The ALJ also noted that Gonzales has not been prescribed any anti-depressant

medication, and that the only doctor's visits for monitoring a condition were annual check-ups by Gonzales's cardiologist, Dr. Grady. *Id*.[5]

Because the ALJ noted "significant inconsistencies" in Gonzales's statements, the ALJ assessed weight to Gonzales's subjective statements "only to the degree they are corroborated by the objective medical evidence, including the well-supported medical opinion evidence." *Id*. As such, the ALJ determined that the testimony of examining physicians Dr. Gable and Dr. Azevedo, the impartial medical expert Dr. West, and of state agency medical consultants Drs. Ikawa, Reddy, and Fountain[6] to be well-supported by the evidence, and accorded them the greatest weight. *Id*. The ALJ concluded that the testimony from these physicians supported his conclusion that Gonzales has been capable since June 1, 2007 of completing "at least a full range of light and sedentary unskilled work." *Id*. The ALJ then determined that the third-party testimony, such as that provided by his mother, was not supported by the "objective clinical findings." *Id*.

The ALJ further concluded that Gonzales's age, education, work experience and residual functional capacity were sufficient to allow him to perform "a significant number of jobs in the national economy." *Id*. at 301. The ALJ found under Medical-Vocational Rule 202.17[7] that Gonzales's "moderate restriction of his ability to understand, remember and carry out complex or detailed tasks do not significantly erode [sic] light and sedentary job base." *Id*. The Appeals Council denied Gonzales's appeal, and the decision of the ALJ became the final decision of the Commissioner.

## II. LEGAL STANDARD

The court has jurisdiction to review the Commissioner's decision denying benefits pursuant to 42 U.S.C. § 405(g). However, the district court's scope of review is limited. The Commissioner's decision (here the decision of the ALJ) will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. 42 U.S.C. 405(g);

---

[5] Presumably the ALJ included this observation to indicate his impression that Gonzales was not suffering from symptoms severe enough to even require multiple or ongoing visits.

[6] Gonzales does not argue with the ALJ's decision to accord Dr. Reddy and Dr. Fountain's medical reports considerable weight and the court therefore does not address them here.

[7] Medical-Vocational Rule 202.17 directs a finding of "not disabled" where a claimant has the residual functional capacity to perform the full range of light work considering the claimant's ages, education and work experience. Tr. 301. The ALJ noted that his finding of "not disabled" was appropriate under this rule. *Id*.

ORDER GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT—No. C-11-06152-RMW
TMDH 8

1  *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). In this context, evidence is substantial if it
2  is "more than a mere scintilla but less than a preponderance; it is such relevant evidence that a
3  reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Charter*, 108 F.3d
4  978, 980 (9th Cir. 1997). To determine whether substantial evidence exists to support the ALJ's
5  decision, the court examines the administrative record as a whole and considers evidence both
6  supporting and detracting from the Commissioner's conclusion. *Tackett v. Apfel*, 180 F.3d 1094,
7  1098 (9th Cir. 1999). Where evidence exists to support more than one rational interpretation, the
8  court must defer to the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005);
9  *Sandgathe*, 108 F.3d at 980.

## III. ANALYSIS

Gonzales argues that ALJ erred in several respects. Specifically, Gonzales argues that: (1) the ALJ failed to fully and fairly develop the record; (2) the ALJ erroneously relied on the testimony of Dr. West, a non-examining medical expert; and (3) the ALJ's "rejection of the opinion of Dr. Gray [sic] and of Mr. Gonzales's credibility is not supported by the evidence of record." *See* Pl.'s Mot., Dkt. No 30. Gonzales further asserts that the court should not remand the case for a new hearing, but should instead reverse the ALJ's opinion, remanding solely for an award of benefits. *Id*. at 1.

### A. Fully and Fairly Developing the Record

It is unclear to the court on what basis Gonzales argues that the ALJ failed to fully and fairly develop the record. *See* Pl.'s Mot. 7-8. While Gonzales makes several observations regarding the procedural happenings in both the first and second hearings, he fails to make any specific contention that the ALJ failed to fully and fairly develop the record. *Id*. The cause for remand was based solely on the fact Dr. Azevedo's medical report was missing. Remand Order 2. Any contentions made regarding the first record are also unwarranted, as the only issue here is whether the record for the second administrative hearing was fully developed, which Gonzales admits it was by referencing the inclusion of Dr. Azevedo's report. Pl.'s Br. 7. The ALJ complied with the Remand Order by developing the record with respect to the missing medical report. Tr. 291-92, 298. Gonzales fails to cite any authority or reasoning beyond the general allegation itself to evidence his contention that the ALJ failed to fully and fairly develop the record. Thus, the argument is rejected.

### B. Dr. West's Testimony

Gonzales, relying on *Yang v. Shalala*, 22 F.3d 213, 218 (9th Cir. 1994), argues that "the ALJ's continued reliance on the testimony of Dr. West deprived Mr. Gonzales of his right to a full and fair hearing." Pl.'s Br. 9. Gonzales further argues that it was improper to afford Dr. West's opinion "great weight" of the many opinions he considered in making his determination. *Id*. at 8. The Commissioner counters by arguing that Gonzales's contentions "fail[] to show how the ALJ committed error . . . or how any such error bears on the ultimate finding that [Gonzales's] disability ended in June 2007." Opp'n 3, Dkt. No. 31.

"[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)). Although the ALJ accorded Dr. West's testimony the greatest weight, the ALJ's ultimate determination that Gonzales is not disabled was based upon his consideration of at least eight other physicians's opinion in the record, many of whom the ALJ determined corroborated his finding that Gonzales is not disabled, and at least four of whom were also accorded "the greatest weight." *See id*. at 298-300. The court fails to see how Gonzales's due process rights were violated when the ALJ considered several medical opinions in drawing his conclusions. Furthermore, Gonzales has neither pointed out any particular legal error nor alleged that the ALJ's determination is not supported by substantial evidence. The court finds that the ALJ's determination is supported by substantial evidence and accordingly rejects this argument.

Gonzales also argues that Dr. West showed concern about his palpitations, suggesting that Dr. West felt he could not work at all. Pl.'s Mot. 10; Tr. 261-62. Gonzales takes that quotation out of context. Dr. West's comments indicating that Gonzales is "not back to a normal heart" and that he was "not comfortable with his palpitations" were made in reference to whether Gonzales would be better suited to light or medium work. Tr. 262. Dr. West states shortly after expressing his concern *in relation to Gonzales performing medium work* that he would "put [Gonzales] more at light." *Id*. Dr. West never indicated that he believed Gonzales was unable to perform work. Additionally, the fact Dr. Grady's report was not available to Dr. West does not conclusively establish that the ALJ's decision would have been different had Dr. West seen it because the ALJ independently considered

and discredited Dr. Grady's report. Accordingly, this argument is rejected.

**C.     Dr. Grady and Gonzales's Testimony**

Gonzales argues that "the reasons given by the ALJ for rejecting the opinion of Dr. Grady and the credibility of Mr. Gonzales are not legitimate . . . contradicted by the record . . . and also violates Mr. Gonzales's right to due process." Pl.'s Br. 11. Citing 20 CFR § 416.927, which generally describes the way an ALJ may give weight to opinions from different sources, Gonzales argues that this "detailed and explicit regulation" was "completely disregarded" by the ALJ and therefore constitutes "reversible error." *Id*. at 11-12.

Regarding Dr. Grady, the Commissioner counters that "the ALJ properly concluded that . . . the treatment evidence failed to support the drastic limitations proposed by Dr. Grady." Opp'n 5. With respect to Gonzales, the Commissioner argues that "the ALJ's finding that [his] conservative treatment undermined his claim of continued disability is proper" and that "the ALJ properly considered inconsistencies between [Gonzales's] testimony and other evidence." *Id*. at 6.

### 1. Gonzales's Testimony

The Ninth Circuit has held that "[a]n adjudicator may also use 'ordinary techniques of credibility evaluation' to test a claimant's credibility. . . So long as the adjudicator makes specific findings that are supported by the record, the adjudicator may discredit the claimant's allegations based on inconsistencies in the testimony or on relevant character evidence." *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991). Accordingly, an "ALJ is entitled to draw inferences 'logically flowing from the evidence.'" *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir.1982).). Here, the ALJ provided sufficient reasoning to discredit Gonzales in making his determination that Gonzales is not disabled.

The ALJ provided several reasons supported by the record to discredit Gonzales's testimony. Specifically, the ALJ was concerned by the findings indicating conservative treatment, that Gonzales was not on any special medication for any of his complained of symptoms, the lack of additional medical evidence from the relevant time period and Gonzales's reported activities of working as a stockman and playing basketball. Tr. 300; *see* list, *supra*, at 5. Gonzales is unable to point to any facts from the record that show the ALJ's reasons for discrediting his testimony were arbitrary. Because the findings are supported by the record, they cannot be disturbed by the court.

### 2. Dr. Grady's Report

Gonzales argues that the ALJ's refusal to credit Dr. Grady is unsupported by the record. Pl.'s Mot. 11. Gonzales contends that Dr. Grady is entitled to more deference as a treating physician under 20 C.F.R. § 416.927, which states:

> *Generally*, we give more weight to opinions from your treating sources, since these sources are *likely* to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 CFR § 416.927 (emphases added). Gonzales therefore argues that Dr. Grady, as a treating physician and cardiologist, is entitled to more weight than opinions like those of Dr. Gable.[8] Pl.'s Mot. 11. However, the language of the statute is permissive and provides no support for this argument. The words "generally" and "likely" show that an ALJ has latitude when assessing treating sources, and is not bound to giving them greater weight as a matter of course. *See, e.g.*, *Allen v. Comm'r of Soc. Sec.*, 2012 WL 5857269 (9th Cir. Nov. 19, 2012) ("In order to reject the medical opinion of a treating physician, when that opinion is contradicted, the ALJ must state specific and legitimate reasons supported by substantial evidence in the record.")

Here, the ALJ's states specific and legitimate reasons supported by substantial evidence from the record to justify his discrediting Dr. Grady. In considering Dr. Grady's report, the ALJ properly showed his consideration in observing that Dr. Grady's "medical statement is not supported by his own treatment notes." In addition to there being a long period between appointments, the ALJ noted that Gonzales's own testimony at the hearing—specifically that he played basketball, carried groceries, performed household chores and had performed stock work at his brother's store—contradicted Dr. Grady's findings. *See* Tr. 299, 255, 264. Furthermore, the ALJ was concerned that Dr. Grady's findings, despite being the most recent, offered no new medications nor did they describe any worsened conditions. Tr. 300. Having no documentation to support a finding of disability, the ALJ properly concluded that Dr. Grady's opinion was not supported by the record.

---

[8] Gonzales refers to Dr. Gable as a non-treating physician. *See* Pl.'s Br. 11. The record supports the conclusion that Dr. Gable did in fact examine Gonzales in person. *See, e.g.*, Tr. 166-68 ("His mother accompanies him."; "Oral cavity: Reveals teeth in good repair."; and "Chest: Reveals an extensive midline scar and one epigastrium perpendicular to that scar.").

With respect to the ALJ's concern that Gonzales's visits to Dr. Grady were irregular, Gonzales argues that Ninth Circuit precedent disallows such a finding where the irregularity occurred because the patient could not afford to see the physician. Pl's. Mot. 12; *see Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1999) ("[W]e have proscribed the rejection of a claimant's complaints for lack of treatment when the record establishes that the claimant could not afford it."), *but see Molina*, 674 F.3d at 1114 ("[I]t was reasonable for the ALJ to conclude that the "level or frequency of treatment [was] inconsistent with the level of complaints." (internal citations omitted).).

Although Gonzales alleges that he did not have insurance and could not afford more frequent treatment, his argument misses the mark. The ALJ did not rely on Gonzales's infrequent treatment as the basis for a finding of no disability. In fact, the ALJ remarked several times on the scarcity of available medical information from the relevant time period, particularly in light of Gonzales allegations that his symptoms were worsening. *See* Tr. 299 ("As mentioned above, the claimant offers very little evidence supporting his allegations of continuing disability in recent years."). This observation is in line with *Molina*, suggesting a concern that the level or frequency of treatment was inconsistent with the level of complaints. The ALJ seemed less concerned with Gonzales's infrequent visits to Dr. Grady *specifically*; instead, the ALJ made this observation because he reasonably inferred that a claimant suffering from worsening or exacerbated conditions would have visited *any* provider during the relevant time period to substantiate his complaints. As the ALJ noted, Gonzales did not. Combined with the ALJ's additional finding that Gonzales's "annual visits by themselves do not document a severe medical impairment where the visits primarily note that the claimant is *doing well*," *id*. (emphasis added), the ALJ's finding was supported by substantial evidence and cannot be disturbed for this reason either.

Accordingly, the court affirms. Consequently, there is no need to address whether a remand for an immediate award of benefits would be appropriate.

## IV. ORDER

For the foregoing reasons the Commissioner's cross-motion for summary judgment is GRANTED and Gonzales's motion for summary judgment is DENIED.

DATED: April 22, 2013

*Ronald M. Whyte*

RONALD M. WHYTE
United States District Judge

United States District Court
For the Northern District of California

ORDER GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT—No. C-11-06152-RMW
TMDH                                14